Thank you, Your Honor. May it please the court, I'm James Spagano on behalf of the appellant, Ian McCray, who sues in his own capacity and as a putative class representative for a class of servers at Pelley's facility in San Jose that he proposes to represent. I would request that the court allow me five minutes for rebuttal. You'll have to help keep track of your own time, though. Thank you very much. This case is about the limitations on federal jurisdiction. And it's kind of an unusual case when you look at the district court's pronouncements. When the district court denied the motion to dismiss on the day following the motion, denied the motion to remand, the district court said, in curious language, that McCray's complaint here is based on state law claims, not a violation of the CBA. The judge was right when he said that. It's curious, because the day before he said the central issue in the case is whether the carve-out letter, part of the CBA, is going to be applicable. He said at that time that even though it was raised by the defendants, and the defendants actually pointed out in the argument, the bulk of plaintiffs' opposition to our removal of this action, and the bulk of their motion to remand, is built around the argument that the court should read the San Jose minimum wage CBA waiver provision to not authorize CBA waivers, but rather to categorically prohibit any and all CBA waivers. That's a slight overstatement, but the thrust of it's accurate. The court, this case should have been remanded, because all that was in issue was whether the putative class was paid in compliance with the ordinance. The defense raised, in defense, that they had this waiver. We have alleged, and if you look at the San Francisco ordinance and compare it with the San Jose ordinance, and those are the only two ordinances to look at, because our research shows that when the San Jose ordinance was being drafted, there were only four municipal wage ordinances in this country. Santa Fe, New Mexico, Albuquerque, New Mexico, Washington, DC, and San Francisco. The only one with an explicit CBA waiver was San Francisco. And when you compare the San Francisco waiver and the San Jose waiver, it's curious, because the San Francisco waiver and the San Jose waiver are exactly the same, with one difference. The San Jose waiver has a condition precedent, which says specifically, to the extent required by federal law. What does that mean to you? What that means to me is it's a saving clause, because of the Bragdon decision. They were concerned, the drafters were concerned that Bragdon and its rationale could be applied to the statute, to say it basically dictates what parties have to negotiate in a CBA negotiation. And tell me how that would work. What's the requirement? Well, if this court, for example, in evaluating that statute, that ordinance, said it violates Bragdon, it would save the statute. Because it would then say, OK, well, we're going to have a CBA carve out, because that's really what they were dealing with with Bragdon. The problem, Your Honor, is that I think the district court, and I hope this court doesn't fall into that, is trying to figure out the rationale. And as this court has said numerous times, The rationale of what? The rationale for why they would put this in if you're saying, well, Bragdon's so limited, probably after none, Bragdon doesn't even apply anymore. If the courts consider that, then they're basically getting into policymaking. This statute can't mean the same thing as the San Francisco statute. It doesn't have that condition precedent. It doesn't make any sense. Why did they put this in? They put it in. The voters voted on it. The plain language says, to the extent required by Federal law. Well, I suppose even if it's nonsensical, your point is that you don't need to interpret the CBA in order to arrive at a result. Justice Kagan. Even nonsensical results, is that right? How is that? Doesn't this, how is that so, that the ordinance, the language of the ordinance, can take away what is in the collective bargaining agreement? No. No. Municipal wage orders have always, private agreement in California cannot be determined by wage agreements, by CBA agreements. You can't say, I'm going to pay my employees less than the minimum wage, generally. The statutes don't allow that. San Francisco's ordinance says specifically, you can. If there's a valid, bonafide CBA, and it does include an explicit waiver of the ordinance, and it's unambiguous, then it's waived. That's not what the San Jose ordinance says. And our position is, you don't have to have that. What case says that the ordinance, that a municipal ordinance can override the provisions of a collective bargaining agreement arrived at pursuant to Federal law? There is no case that specifically has dealt with that issue that I'm aware of. But applying it to state wage law, state wage law, you can't have a private agreement. That's clear to waive minimum wage. You can't waive the minimum wage under the Federal Labor Standards Act. So this ordinance was, in our judgment, was put in with that language in case a court said, well, a municipal wage ordinance is going to be treated differently. What are you relying on for the proposition that the state minimum wage trumps the collective bargaining agreement? The American Hotel Association said that specifically, because that was one of the arguments made in the LAX case, in the LAX corridor case, by the employers to say, what you're really doing is you're making me unionize my employees. And this court rejected that. Well, Mr. Pagano, you may be right, you may be wrong, but the bottom line is, you don't need to look to the CBA to decide that question. And Judge Diaz has hit the nail on the head. That's exactly right. That's exactly right. This court doesn't have to determine whether the CBA, first of all, if there's a declaratory relief action brought or something like that, that's a different issue. But here, Judge Diaz is exactly right. This court, the district court, didn't need to get to that. The district court just needed to say, well, Mr. McRae is stating a state law wage claim based on a local ordinance, and that goes to the state judge. The state judge then gets to make the decisions. And I think he got it wrong because he somehow conflated that and said, okay, well, we can get over that. Basically, we can get over that issue. Why don't we have to look at the collective bargaining agreement to see whether or not there was a waiver in it? Because nobody raised the waiver issue. Mr. McRae didn't say in his complaint, this violates the ordinance in part because the waiver is inappropriate under the law. It was raised by the other side. Yeah, but my understanding of the – well, they raised it. By not taking it into account in the complaint, you've made this a question solely of state law? Right. If you – my position or our position is that by raising it, you're still raising, as Judge Diaz said, the interpretation and application, not of the CBA, but of the ordinance. Is – does the ordinance permit a waiver? If you find it does, then perhaps – you're right, Judge Roeder – then perhaps we get to the next step, which is, is this good enough? But we're assuming a lot. Well, are you going to make that argument at some point? Because if you are, then you seem to be making an end run around the remand question. No, I don't think so, because, again, you have to interpret – I thought your point was that the waiver or opt-out, whatever you want to call it, is patently clear. There's nothing to interpret. That's true. But the fact is, again, we're just dealing with the ordinance. We're not dealing with anything beyond the ordinance. Just because somebody in defending against the case raises this CBA argument, because that – then every time somebody came in in a unionized situation and said, I'm not being paid the minimum wage, the union comes in – or the employer comes in and says, I'm subject to a collective bargaining agreement, that's it, and we're done. We have to go into Federal court. You're done. You have a case that belongs in Federal court to see whether the collective bargaining agreement and the ordinance. Well, but you don't. In this case, with this ordinance the way it's written, you have to go over – you have to jump over another hoop. And that is you have to say, okay, have they triggered the ordinance, which is all about interpretation of an ordinance, not the CBA, because we don't care what's in the CBA if you haven't triggered the ordinance. And the ordinance has a specific condition precedent, which is that it's required by Federal law to have a CBA carve-out. That's the clear language of the ordinance. You'd have to read that whole clause out. And the best example I can give you is compare the San Francisco ordinance with the San Jose ordinance. And you'll see they're almost identical, except the San Jose ordinance has this condition precedent. But as Judge Diaz says, you still – that's still a question of statutory interpretation. I mean, so, I mean, I understand your point, but I think you jump the gun when you get there, because I think you can always raise that in any minimum wage case, any wage in our case, you can always raise the CBA and move it to Federal court. And I don't believe that that's the law. Counsel, as a reminder, you wanted to keep five minutes for Russell Pye. Thank you. Your Honor, the floor. Good morning, Your Honor. Bill Dritzis on behalf of Appellees Marriott and San Jose Marriott. This court should affirm the district court's orders because Section 301 of the San Jose Marriott Act requires resolution of the state law claim is dependent on an interpretation of the collective bargaining agreement. The cases, while seemingly sometimes inconsistent, I think in the past several years, starting with Firestone and Lovatus, have distilled down really to this basic point, which is that if resolution of the claim requires an interpretation as opposed to just a look at or some hypothetical connection, then it becomes a Federal claim under Section 301. And you can examine the cases to see the differences. I think that's accurate. So the question is what interpretation needs to be done in this case. Okay. There is a paragraph, Your Honor, the waiver agreement in the collective bargaining agreement. It's not the plaintiff is the master of his or her complaint, and the plaintiff in this case is focused solely on the interpretation of the ordinance, not the CBA. So why shouldn't we accept that? Well, Your Honor, the plaintiff's complaint actually brings us squarely into contention. Brings what into contention? The collective bargaining agreement. Paragraph 22 of the plaintiff's complaint says that there was a corporate policy memorializing the collective bargaining agreement to underpay the servers despite the San Jose minimum wage. That's just a statement of the existence of the waiver. It doesn't suggest that the Court needs to do anything to interpret that waiver. I think, Your Honor, the Court in resolving the case, the essence of the claim is to resolve the case, do we need to look at the waiver, because the waiver is a precondition. The look-at language is, at least according to this Court's case law, is something that separates a case from an interpretation. If you're simply looking at a collective bargaining agreement and not interpreting it, then that's not a question for the Federal courts. I agree. Levada says that, Burnside says it. That's right. So why is this case any different? But this is different, because if you – and Levada says that – notes that a waiver does not need to be interpreted in this case in Levada's, because there was no waiver. Burnside emphasizes that and then goes on to say that if there was a waiver, you'd have to review the actual consummated waiver language to see if it meets the Federal standard for clear and unmistakable waiver. Well, how do you define interpretation? Doesn't interpretation according to the case law suggest that there are two conflicting views of a CBA and a court has to decide that? What's the conflict here? This waiver, an opt-out, seems patently clear to me. Your Honor, there's been no case that has said that a waiver in a collective bargaining agreement does not result in 301 preemption. There is suggestion, strong suggestion, in both Levada's and Burnside that they're talking, admittedly, when there is no opt-out in the contract, but they expressly distinguish that and say, for Federal 301 preemption, we need to look to see if there is a clear and unmistakable waiver. And so we have here not just – if you look at the other cases, they say, well, all you have to do is look at a wage rate, or all you have to do is look to see, you know, what they say in Levada's. Look at the calendar. That's not what you have to do here. The court, for jurisdiction and for preemption purposes, needs to look at and evaluate the waiver that the parties negotiated in the section – in the appendix to determine if, number one, it addresses a minimum wage, and, number two, if it satisfies the Federal standards for a clear and unmistakable waiver. Roberts, so let me ask you this. So in Burnside, we said, I think, that checking to see whether a CBA contained a clear and unambiguous waiver constituted looking to the CBA and not interpreting it. How is this case any different? Because there was no waiver in Burnside. That's the point. They were – they go on to say, if you continue on reading that, the court goes on to say, if there was a waiver, the actual and consummated waiver matters. And so that's – and that's what the district court found in this case. This is the flip side of Burnside. Burnside was, there was no waiver, and we're not going to find preemption just because, theoretically, in some inchoate way, a party could put a waiver in. But here, there actually is a waiver. And here there is a paragraph that the Court needs to interpret to determine if it meets the standards for both Federal preemption and the standards of this wage order, which says it needs to be clear and unambiguous, and the Federal standard is clear and unmistakable. So we submit that this is – this is the other side of the coin in both Lovatus and Burnside. So it would – so we said our conclusion that the possibility of waiver does not automatically trigger preemption makes sense. That makes sense, because – because otherwise, any time – anyone could say, well, you could have put a waiver in, so we have to look at the contract to see if there's a waiver. But we don't have to worry about the possibility. We actually have a fully negotiated waiver between the parties that needs to be looked at both for jurisdiction and for preemption purposes. Now, if I can just address for a second the counsel's point, we don't need to look at the San Francisco ordinance to compare it to the San Jose ordinance. This is not State of California that you can say that the policymakers use different language, use different results. San Jose is a different jurisdiction than San Francisco. The – our record that we presented and the amicus record sets forth a plethora of information as to why the interpretation submitted by the plaintiff's counsel in this case, or the appellant, which was rejected by the district court, is incorrect. It makes no sense to say that you have an ordinance which is there to say there is no waiver going to be granted. As a matter of fact, as was illustrated through Unite HERE's counsel, that would be impermissible under Federal law. You cannot – the Federal government or a State cannot tell the bargaining parties what needs to be in a contract. So it makes no sense in interpreting that provision to say we're making – you know, we're making a provision here that to the extent required by Federal law, the Federal law will never require a waiver because that is inconsistent with the collective bargaining process, which is to referee the parties but not to specify the terms. Well, is it your position that the collective – if the collective bargaining agreement refers to the – to a wage different from the minimum wage, that you – that that does not – that that in and of itself requires interpretation of the collective bargaining agreement? I'm not quite understanding how far your position goes. I don't think we need to go that far. I think my position is, because that would be more to, like, Burnside or Cobalt, where just a look at – I'm not suggesting we need to go that far. I'm saying the reason you need to go further in this case is because you have the presence of an actual waiver negotiated by the parties that expressly exempts the San Jose minimum wage ordinance, which its provisions allow for. And the wage – and the wage ordinance says that the – that there can be a waiver provided that it's explicitly set forth. Correct. Clear and unambiguous. So that in – the wage ordinance itself would appear to require some interpretation of the collective bargaining agreement, wouldn't it? Well, they're – they are connected. One gives rise to the other. Yeah. But when you get to the court here, when the case is filed and they're saying you didn't pay the appropriate wage, that triggers a review of the collective bargaining agreement. And the agreement itself has a clear waiver which dovetails back to what the ordinance allows. And the agreement binds the plaintiff. Absolutely. A collective bargaining agreement – the union is the exclusive bargaining representative for the entire bargaining unit. And the plaintiff was in the bargaining unit. Counsel, if I could ask a question, please. Sure. Would you say that in any case or in every case where there is a waiver, then the collective bargaining agreement has to be interpreted? Actually, Your Honor, there – I found no case in which there was a waiver permitted under law and a waiver in a contract. And I think that's because when you have those worlds coming together, no one's challenged it. This is the first one we've seen challenge it. What we have found is, number one, that there's no case where there has been a waiver and the court has found it's not preempted. And more importantly, number two, as I mentioned, the only cases that we've seen that have talked about this directly are Levatas and Burnside. And they're dealing with a situation where there is no waiver and they find that fact itself is not sufficient for preemption. But they go on to say, importantly, that if there is a waiver that's present, we need to look to see if it's clear and unmistakable to satisfy the Federal rules to – for 301 preemption. So we're – we don't have a case – this is the case, essentially, of first impression with a waiver present, but we certainly have direction, we believe, from Burnside and Levatas as to what to do with it. But we do have cases – I'm sorry. Go ahead. We do have cases like Cobalt where there's language in a CBA that the court deemed to be sufficiently clear that it didn't require any interpretation. Why is the waiver language any different? I mean, is it the principle here that – trying to make a distinction between engaging in an interpretation when a dispute arises as opposed to a simply mechanical application of a non-disputed, unambiguous waiver? Well, Cobalt – it's interesting you say that, Your Honor. There's two – two parts of Cobalt. One part of Cobalt found that you did require interpretation. That's right. And then another part, which was, as I say, the best kind of quip was the Supreme Court in Levatas that said it's just all you need to do is consult a calendar. The cases are pretty clear that if the only thing you need to do is take a look and see if, you know, what is a wage rate or was there a waiver present, then that is not going to be sufficient. We don't have that here. We have an actual paragraph negotiated by the bargaining parties specifically addressing the wage rate and the waiver. So we are in a different situation. The plaintiff has made the ordinance, which has a predicate clause there about we believe that a waiver is – preempts the claim, a central part of the case. So this is not the hypothetical connection that one of the cases said or some attenuated connection. The waiver exemption and the waiver and the contract are core to this decision. Okay. The plaintiff has suggested because the complaint itself didn't – relies solely on the minimum wage provisions of the ordinance and didn't invoke any question with respect to the waiver that that's controlling. Your Honor, there are plenty of cases – there are plenty of cases. Let's take Firestone, for example. This is the issue – Section 301 preemption is so broad that whether a plaintiff mentions it or not, if resolution of the claim requires an interpretation of the labor contract, then 301 applies. So in this case, the plaintiff actually does cite the labor contract in a way that says that it's somehow illegal. So we have beyond what Firestone said. But there are plenty of cases, Firestone being illustrative, where the courts have found 301 preemption because the claim requires an interpretation even if the complaint doesn't mention it.  Are there any further questions? Thank you, Your Honor. Thank you. Thank you. I'll be brief. There's just two things I want to say. First of all, I think Judge Gould hit the nail on the head. The plaintiff is – the plaintiff here cited the ordinance in terms of it could not be waived. A motion for summary judgment to a State court that said it could be waived, that that language did trigger it, that would create a different case. If Mr. McCrae had raised in response to something like that an amended complaint that said, oh, well, I think the waiver is – it doesn't work the way it's written, then you would have to interpret the waiver. But we don't believe you ever have to get there because we don't think it's ever been triggered because we don't think Federal law requires that. I would cite the court to Canal v. San Francisco-Hilton, 681 Federal Appendix 625, decided in 2017 that had to do with Labor Code sections 351. And in that case, the San Francisco-Hilton said the way we tip out our servers is based in part upon the CBA. And Judge White for the United States District Court for the Northern District of California said that created a 301 issue. This court reversed and said, no, it didn't, because you don't have to look at the CBA. You have to look at 351 of the Labor Code, which is a State law claim. We think this case is very similar to that. This is a minimum wage case. That was a tip case. But the basic theory and rationale is the same. If the defense believes that Federal law requires a carve-out, therefore they met the standard, and Mr. McCrae were then to, in response, amend the complaint and say, oh, yes, you did, but then, Judge Schroeder, we'd have a different case. And that would probably be a 301, because you might then have to interpret, because Mr. McCrae would be raising the issue, hey, it's not a legitimate way. Even though you have a right to do it, it's not a legitimate waiver. And the plaintiff can make the collective bargaining agreement irrelevant. He can't. He can't to an extent, because, I mean, if he loses, if the court says, well, this waiver's going to be, you know, it's appropriate, I'm going to grant judgment, his choice is to accept judgment or amend the complaint, and then he's lost it that way. So the defense isn't helpless. Defense isn't just stuck with, oh, whatever he alleges, we have to just accept. So there would be an opportunity for a remand later? There could be, depending on what the plaintiff does. The plaintiff could accept the decision of the State court on the issue of the carve-out, go up on appeal and lose, and it would be done. He doesn't have to amend his complaint. If the courts find that the statute's been activated, then, and he decides to accept that, or that is the law, then he's done, the case is done, but it's not a 301 case. Thank you. The case just argued is submitted for decision.
judges: Diaz, Schroeder, Gould